UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NANCY ANN BARONE,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>ANDREW SAUL, Commissioner of Social Security,<br><br>　　　　　Defendant. | No. 1:19-cv-00101-GSA<br><br>**ORDER DIRECTING ENTRY OF JUDGMENT IN FAVOR OF COMMISSIONER OF SOCIAL SECURITY AND AGAINST PLAINTIFF** |

**I.　　Introduction**

Plaintiff Nancy Ann Barone[1] ("Plaintiff") seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her application for disability insurance benefits pursuant to Title II of the Social Security Act. The matter is currently before the Court on the parties' briefs which were submitted without oral argument to the Honorable Gary S. Austin, United States Magistrate Judge.[2] *See* Docs. 18 and 21. Having reviewed the record as a whole, the Court finds that the ALJ's decision is supported by substantial evidence and applicable law. Accordingly, Plaintiff's appeal is denied.

///

---

[1] The record also refers to Plaintiff as "Nancy Dulay," her married name.
[2] The parties consented to the jurisdiction of the United States Magistrate Judge. *See* Docs. 7 and 8.

1

## II. Procedural Background

On May 7, 2015, Plaintiff filed an application for disability insurance benefits alleging disability beginning October 30, 2010.[3] AR 17. The Commissioner denied the application initially on November 5, 2015, and following reconsideration on April 19, 2016. AR 17.

On June 3, 2016, Plaintiff filed a request for a hearing. AR 17. Administrative Law Judge Judith A. Kopec presided over an administrative hearing on May 24, 2017. AR 31-74. Plaintiff appeared and was represented by an attorney. AR 31. On November 28, 2017, the ALJ denied Plaintiff's application. AR 17-26.

The Appeals Council denied review on October 25, 2018. AR 3-8. On January 23, 2019, Plaintiff filed a complaint in this Court. Doc. 1.

## III. Factual Background

### A. Medical Records

The record includes extensive records of medical treatment provided by the Permanente Medical Group from March 2010 through April 2017. AR 286-87, 310-2771. Although the Court has read and considered the full administrative record, because the parties are familiar with Plaintiff's record of medical treatment and the record is voluminous, this decision will not present a detailed overview of Plaintiff's recent medical treatment and diagnoses. Specific matters will be addressed in the course of analyzing Plaintiff's contentions on review that the ALJ did not fairly consider Plaintiff's subjective allegations of pain and that the determination was not supported by substantial evidence. Below is the Court's review:

Plaintiff's physicians discovered a cancerous lung tumor in Spring 2011. Plaintiff's lung tumor was removed in a right middle lung lobectomy in October 2011. AR 706. Following the surgery Plaintiff experienced a complication of a small pneumothorax and complained of periodic chest pain for several years thereafter. AR 838. Plaintiff did not require chemotherapy or

///

---

[3] The reason for the choice of the October 2010 onset date is not apparent from the record. Surgery to remove Plaintiff's lung tumor occurred in October 2011. However, to the extent that the onset date identified in the hearing decision is in error, any such error is harmless in light of the Commissioner's denial of Plaintiff's application and the Court's affirmance of that determination.

radiation treatment. The medical records indicated that Plaintiff's chest and lungs were normal and that her cancer had not recurred or metastasized. AR 2033, 2205, 2207.

Throughout the time period included in the administrative record, Plaintiff consistently reported pain in multiple areas of her body, which her physicians treated with opiate and other pain medications. Identification of appropriate medications was complicated by Plaintiff's impaired liver function, likely a result of her long history of heavy alcohol abuse. Plaintiff consistently sought more and stronger medication to address her pain. Plaintiff frequently increased the dosages of her pain medications and requested early refills when her medications ran out. In December 2015, Hector Ley-Han, M.D., warned Plaintiff that she was becoming tolerant to pain medications and that continued increases in dosage would lead to undesirable side effects. AR 2355. In July 2016, the doctor suggested Plaintiff consider treatment at the pain clinic. AR 2437.

After imaging indicated that Plaintiff's chest and lung had healed following her 2011 surgery, Plaintiff continued to report chest and other bodily pain. Colonoscopy and endoscopy studies revealed only minor irritation of Plaintiff's digestive tract. AR 2145-46.

In late 2013 and early 2014, Plaintiff complained of pain in her upper and lower extremities. *See, e.g.,* AR 1275-80, 1307-08. Following imaging and neurological assessment, her condition was diagnosed as small fiber neuropathy, likely attributable to her history of alcohol abuse. AR 1307, 1735-36, 2033. Imaging of Plaintiff's hands and knees were unremarkable. AR 2625, 2628.

In April 2015, magnetic resonance imaging of Plaintiff's cervical spine revealed mild-to-moderate degenerative disc disease. AR 1974-75. Sun Duk Hansrote, M.D., opined that Plaintiff's pain was not attributable to spinal spondylosis. AR 2029.

In September 2015, Win Minn Lim, M.D., diagnosed fibromyalgia without articulating a detailed basis for the diagnosis. AR 2285.

During the period at issue Plaintiff also evinced mental health symptoms. In 2012 and again in 2014, Plaintiff was briefly hospitalized pursuant to § 5150 holds following apparent suicide attempts. *See* AR 2379-2402. In each case Plaintiff was stabilized and released with

acknowledgement of various life stressors including her responsibility to care for her sick brother, the imprisonment of one son, and the mental illness of her other son who set fire to the family home in 2014. Other than crisis treatment provided on those two occasions nothing in the record notes ongoing treatment from a psychiatrist or any counseling or psychotherapy. Although Plaintiff occasionally reported depression to her treating physicians, and was sometimes observed to be anxious, her only mental health treatment consisted of antidepressant and anti-anxiety drugs.

### B. **Plaintiff's Testimony**

Plaintiff (born October 1964) lived with her husband, who supported her. AR 36-37. She completed tenth grade. AR 38. She drove rarely due to spasms and a lack of sharpness and confidence. AR 37. Plaintiff confirmed that she no longer had a problem with alcohol. AR 55.

Plaintiff became disabled following lung surgery in October 2010 (2011?). AR 44. Although she continued to "work through the pain," her employer discharged her following an emergency room visit in 2013. AR 44. Thereafter, she was unable to return to work. AR 44.

Plaintiff experienced continual pain and swelling in her elbows, knees, feet and other joints. AR 46. Sometimes her medications worked and sometimes they did not. AR 46. At most the medication took the edge off the continual pain. AR 47. Sleeping was difficult because Plaintiff experienced pain when turning over from the weight of her bed coverings and from her hard and heavy pillow. AR 47.

Plaintiff was unable to lift things. AR 46. She frequently dropped objects. AR 48. Reaching was painful. AR 48. She needed to limit the amount of housework she performed to avoid pain afterward. AR 49. Her knees were unstable and caused frequent falls. AR 49. She frequently used a cane. AR 50.

Plaintiff could sit for about an hour before needing to change positions. AR 51. When shopping she could stand in line for 15 to 20 minutes before needing to sit down. AR 51. Plaintiff followed her doctor's instructions to walk for exercise, but she did not detect any difference in her condition. AR 52.

///

**IV.**   **Standard of Review**

Pursuant to 42 U.S.C. §405(g), this court has the authority to review a decision by the Commissioner denying a claimant disability benefits. "This court may set aside the Commissioner's denial of disability insurance benefits when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999) (citations omitted). Substantial evidence is evidence within the record that could lead a reasonable mind to accept a conclusion regarding disability status. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is more than a scintilla, but less than a preponderance. *See Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996) (internal citation omitted). When performing this analysis, the court must "consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Robbins v. Social Security Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (citations and internal quotation marks omitted).

If the evidence reasonably could support two conclusions, the court "may not substitute its judgment for that of the Commissioner" and must affirm the decision. *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997) (citation omitted). "[T]he court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citations and internal quotation marks omitted).

**V.     The Disability Standard**

> To qualify for benefits under the Social Security Act, a plaintiff must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). An individual shall be considered to have a disability only if . . . his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. §1382c(a)(3)(B).

To achieve uniformity in the decision-making process, the Commissioner has established

a sequential five-step process for evaluating a claimant's alleged disability. 20 C.F.R. §§ 416.920(a)-(f). The ALJ proceeds through the steps and stops upon reaching a dispositive finding that the claimant is or is not disabled. 20 C.F.R. §§ 416.927, 416.929.

Specifically, the ALJ is required to determine: (1) whether a claimant engaged in substantial gainful activity during the period of alleged disability, (2) whether the claimant had medically determinable "severe impairments," (3) whether these impairments meet or are medically equivalent to one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1, (4) whether the claimant retained the residual functional capacity ("RFC") to perform his past relevant work, and (5) whether the claimant had the ability to perform other jobs existing in significant numbers at the national and regional level. 20 C.F.R. § 416.920(a)-(f).

**VI.     Summary of the ALJ's Decision**

The Administrative Law Judge found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of October 30, 2010. AR 19. Her severe impairments included peripheral neuropathy, cervical degenerative disc disease and cervical facet arthropathy. AR 19. None of the severe impairments met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525 and 404.1526). AR 21.

The ALJ concluded that Plaintiff had the residual functional capacity to perform a wide range of light work with the following limitations: lifting and carrying ten pounds frequently and twenty pounds occasionally; sitting six hours and standing and walking four hours in an eight-hour workday; alternating ten minutes every hour while remaining on task; using a cane while ambulating uneven terrain; occasionally climbing ramps and stairs, kneeling, stooping, crouching and crawling; no climbing of ladders, ropes and scaffolds; and, limited to only occasional exposure to cold weather. AR 21.

Plaintiff was able to perform her past relevant work as a service writer and sandwich maker. AR 24. Accordingly, the ALJ found that Plaintiff was not disabled at any time from

///

October 30, 2010, the alleged disability onset date, through November 28, 2017, the date of the

1 decision. AR 25.

## VII. The ALJ Properly Assessed the Reliability of Plaintiff's Testimony

Plaintiff contends that the ALJ erred in rejecting Plaintiff's testimony concerning her pain symptoms and limitations. The Commissioner disagrees correctly emphasizing that applicable law precludes granting disability benefits based on a claimant's subjective representations.

An ALJ is responsible for determining credibility, resolving conflicts in medical testimony and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). His or her findings of fact must be supported by "clear and convincing evidence." *Burrell v. Colvin*, 775 F.3d 1133, 1136-37 (9th Cir. 2014).

To determine whether the ALJ's findings are supported by sufficient evidence a court must consider the record as a whole, weighing both the evidence that supports the ALJ's determination and the evidence against it. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). "[A] federal court's review of Social Security determinations is quite limited." *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015). "For highly fact-intensive individualized determinations like a claimant's entitlement to disability benefits, Congress places a premium upon agency expertise, and, for the sake of uniformity, it is usually better to minimize the opportunity for reviewing courts to substitute their discretion for that of the agency." *Id.* (quoting *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014), quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 621 (1966)) (internal quotation marks omitted). Federal courts should generally "'leave it to the ALJ to determine credibility, resolve conflicts in the testimony, and resolve ambiguities in the record.'" *Brown-Hunter*, 806 F.3d at 492 (quoting *Treichler*, 775 F.3d at 1098). In this case, the ALJ relied on inconsistencies between the testimony and objective evidence.

Social Security Ruling 16-3p applies to disability applications heard by the agency on or after March 28, 2016. Ruling 16-3p eliminated the use of the term "credibility" to emphasize that subjective symptom evaluation is not "an examination of an individual's character" but an

///

endeavor to "determine how symptoms limit ability to perform work-related activities." S.S.R.

16-3p at 1-2.

A claimant's statements of pain or other symptoms are not conclusive evidence of a physical or mental impairment or disability. 42 U.S.C. § 423(d)(5)(A); Soc. Sec. Rul. 16-3p. "An ALJ cannot be required to believe every allegation of [disability], or else disability benefits would be available for the asking, a result plainly contrary to the [Social Security Act]." *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989).

An ALJ performs a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible. *See Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014); *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996); S.S.R 16-3p at 3. First, the claimant must produce objective medical evidence of an impairment that could reasonably be expected to produce some degree of the symptom or pain alleged. *Garrison*, 759 F.3d at 1014; *Smolen*, 80 F.3d at 1281-1282. In this case, the first step is satisfied by the ALJ's finding that Plaintiff's "medically determinable impairments could reasonably be expected to produce the alleged symptoms." AR 23. The ALJ did not find Plaintiff to be malingering.

If the claimant satisfies the first step and there is no evidence of malingering, the ALJ must "evaluate the intensity and persistence of [the claimant's] symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities." S.S.R. 16-3p at 2. "[S]ome individuals may experience symptoms differently and may be limited by symptoms to a greater or lesser extent than other individuals with the same medical impairments, the same objective medical evidence and the same non-medical evidence." S.S.R. 16-3p at 5. In reaching a conclusion, the ALJ must examine the record as a whole, including objective medical evidence; the claimant's representations of the intensity, persistence and limiting effects of his symptoms; statements and other information from medical providers and other third parties; and, any other relevant evidence included in the individual's administrative record. S.S.R. 16-3p at 5. "The determination or decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly

///

articulated so the individual and any subsequent reviewer can assess how the adjudicator

evaluated the individual's symptoms." S.S.R. 16-3p at *10.

Because a "claimant's subjective statements may tell of greater limitations than can medical evidence alone," an "ALJ may not reject the claimant's statements regarding her limitations merely because they are not supported by objective evidence." *Tonapetyan v. Halter*, 242 F.3d 1144, 1147-48 (2001) (quoting *Fair*, 885 F.2d at 602). *See also Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991) (holding that when there is evidence of an underlying medical impairment, the ALJ may not discredit the claimant's testimony regarding the severity of his symptoms solely because they are unsupported by medical evidence). "Congress clearly meant that so long as the pain is *associated* with a clinically demonstrated impairment, credible pain testimony should contribute to a determination of disability." *Id.* (internal quotation marks and citations omitted).

The law does not require an ALJ simply to ignore inconsistencies between objective medical evidence and a claimant's testimony. "While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of claimant's pain and its disabling effects." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); SSR 16-3p (citing 20 C.F.R. § 404.1529(c)(2)). As part of the analysis of the record as a whole, an ALJ properly considers whether the objective medical evidence supports or is consistent with a claimant's pain testimony. *Id.*; 20 C.F.R. §§ 404.1529(c)(4), 416.1529(c)(4) (symptoms are determined to diminish residual functional capacity only to the extent that the alleged functional limitations and restrictions "can reasonably be accepted as consistent with the objective medical evidence and other evidence"). "[O]bjective medical evidence is a useful indicator to help make reasonable conclusions about the intensity and persistence of symptoms, including the effects those symptoms may have on the ability to perform work-related activities." S.S.R. 16-3p at 6. Because objective medical evidence may reveal the intensity, persistence and limiting effects of a claimant's symptoms, an ALJ must consider whether the symptoms reported by a claimant are consistent with medical signs and laboratory findings of record. *Id.* For example, "reduced joint motion, muscle spasm, sensory deficit, and motor disruption illustrate findings that may result

from, or be associated with, pain." *Id.*

In this case, the ALJ began her analysis by considering information that Plaintiff's husband provided in a Third Party Adult Function Report. AR 22. The ALJ was unpersuaded by Mr. Dulay's representation of his wife's limited mobility finding it inconsistent and unsupported by the record as a whole. AR 22.

The ALJ then considered Plaintiff's peripheral neuropathy and cervical degenerative disc disease, acknowledging the limitations on Plaintiff's ability to work as a result of those impairments. AR 22. However, the ALJ found that Plaintiff's representations of her daily activities were not as limited as would be expected in view of Plaintiff's subjective complaints. AR 23. In particular, Plaintiff remained able to cook, clean, shop and walk for exercise. AR 23.

Looking to the medical records and expert opinions of Plaintiff's residual functional capacity, the ALJ acknowledged Plaintiff's impairments but concluded that despite limitations Plaintiff remained able to perform work consistent with a residual functional capacity to perform a wide range of light work with the following limitations: lifting and carrying ten pounds frequently and twenty pounds occasionally; sitting six hours and standing and walking four hours in an eight-hour workday; alternating ten minutes every hour while remaining on task; using a cane while ambulating uneven terrain; occasionally climbing ramps and stairs, kneeling, stooping, crouching and crawling; no climbing of ladders, ropes and scaffolds; and, limited to only occasional exposure to cold weather. AR 21, 23.

The hearing decision sets forth abundant evidence in the record to support the ALJ's determination that Plaintiff's representations to the agency were not fully reliable. The Court cannot second guess the ALJ's assessment of Plaintiff's credibility.

**VIII. Sufficient Evidence Supported the ALJ's Determination at Step Four**

Plaintiff further contends that the record as a whole did not support the ALJ's determination of her residual functional capacity. The Commissioner counters that substantial evidence in the record supported the ALJ's determination of Plaintiff's residual functional capacity.

///

### A. Medical Opinions

The administrative record includes physicians' notes from numerous and frequent medical appointments, but little expert opinion interpreting the meaning of these records. The medical opinions are limited to the following:

#### 1. Agency Physicians

On initial review in November 2015, C. Bullard, M.D., considered Plaintiff's initial claims of neuropathy in both hands and hiatal hernia. AR 80. Dr. Bullard noted that Plaintiff had been treated for lung cancer in October 2011, but currently had no evidence of disease. AR 80. Plaintiff had reduced sensation in her upper extremities and below her knees, but had no motor deficits. AR 80-81. She could perform a narrow range of light work with use of a cane for prolonged ambulation, or ambulation on uneven terrain. AR 81. Plaintiff's use of a cane, necessitated by a recent ankle sprain,[4] was expected to resolve in less than twelve months. AR 81. J. Collado, M.D., added that Plaintiff's alcohol abuse was in remission and that she had no other mental health related work limitations AR 81.

Accordingly, Dr. Bullard opined that Plaintiff retained the residual functional capacity to lift and carry twenty pounds occasionally and ten pounds frequently; stand and walk about six hours in an eight-hour workday; sit about six hours in an eight-hour workday; frequently balance; occasionally climb ramps and stairs, stoop, kneel, crouch and crawl; and, never climb ladders, ropes or scaffolds. AR 83. Plaintiff should not be exposed to hazards, specifically unprotested heights. AR 84.

On reconsideration in August 2016, E. Cooper, M.D., and Bruce Campbell, Ph.D., agreed with the analysis and findings of the initial review. AR 96-100.

#### 2. Consultative Examination: Internal Medicine

Internist Roger Wagner, M.D., conducted a comprehensive internal medicine evaluation of Plaintiff in October 2015. AR 2205-10. Plaintiff arrived for the examination using a four-wheeled walker[5] and wearing heavy winter gloves. AR 2206. She was able to rise from her

---

[4] In September 2015, Plaintiff injured her right knee and ankle in a fall. AR 2254.
[5] Plaintiff explained that she was using the walker following a recent ankle sprain. AR 2208.

11

waiting room chair and push her walker to the examining room without assistance. AR 2206. Plaintiff could sit comfortably without moving around, bend at the waist to remove her shoes and socks, demonstrate good dexterity and flexibility, get on and off the examining table, and provide an adequate medical history. AR 2207. Her extremities were warm without cyanosis, clubbing or edema. AR 2207.

Plaintiff had full motor strength of the upper and lower extremities bilaterally. AR 2209. Sensation to light touch and pinprick were reduced below the knees bilaterally. AR 2209. Deep tendon reflexes were absent in the lower extremities. AR 2209. Dr. Wagner wrote of Plaintiff's coordination, station and gait:

> The claimant has a somewhat positive Romberg, She had a normal station. Her gait she stated she felt too unstable to attempt to walk without holding my hand. She was able to walk in a fairly normal manner while holding my hands. She was able to briefly stand on toes, but declined to walk on toes and heels stating she felt too unstable. The finger-to-nose was normal.

AR 2207.

Dr. Wagner diagnosed a history of lung cancer, hypertension and neuropathy to the knees and elbows bilaterally. AR 2209. He opined that Plaintiff could stand and walk for four hours in an eight-hour workday; could sit without limitation; requited a cane or walker to prevent falls; could lift twenty pounds occasionally and ten pounds frequently; could climb occasionally; and, should avoid working around unprotected heights. AR 2209-10. Manipulative activities were not limited. AR 2210.

### 3. **Psychiatric Consultative Examination**

In October 2015, psychiatrist Antoinette Acenas, M.D., conducted a comprehensive psychiatric examination of Plaintiff. AR 2201-04. Plaintiff recounted a long history of depression but advised Dr. Acenas that she was not currently depressed, had been sober from alcohol abuse since May 2015, and did not need psychiatric treatment. AR 2201. Dr. Acenas diagnosed only alcohol abuse in remission, but not that Plaintiff's unemployment was a stressor producing a high risk for relapse. AR 2203. In the doctor's opinion, Plaintiff had no impairment in relating appropriately to others, coworkers, supervisors and the general public; understanding

and following simple instructions; understanding and following complex and detailed instructions; maintaining the appropriate level of concentration, persistence and pace to perform a one- or two-step task; maintaining adequate persistence to perform complex tasks; tolerating the usual stress and pressures associated with day-to-day work activities; and, managing changes in a routine work situation. AR 2203.

### B. Determining Residual Functional Capacity

"Residual functional capacity is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." SSR 96-8p. The residual functional capacity assessment considers only functional limitations and restrictions which result from an individual's medically determinable impairment or combination of impairments. SSR 96-8p.

A determination of residual functional capacity is not a medical opinion, but a legal decision that is expressly reserved for the Commissioner. See 20 C.F.R. §§ 404.1527(d)(2) (RFC is not a medical opinion), 404.1546(c) (identifying the ALJ as responsible for determining RFC). "[I]t is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity." *Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001). In doing so the ALJ must determine credibility, resolve conflicts in medical testimony and resolve evidentiary ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039-40 (9th Cir. 1995).

"In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record such as medical records, lay evidence and the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment." *Robbins*, 466 F.3d at 883. *See also* 20 C.F.R. § 404.1545(a)(3) (residual functional capacity determined based on all relevant medical and other evidence). "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting evidence, stating his interpretation thereof, and making findings." *Magallanes*, 881 F.2d at 751(quoting *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986)).

The opinions of treating physicians, examining physicians, and non-examining physicians are entitled to varying weight in residual functional capacity determinations. *Lester v. Chater*, 81

F.3d 821, 830 (9th Cir. 1995). Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual. *Id.*; *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996). The opinion of an examining physician is, in turn, entitled to greater weight than the opinion of a non-examining physician. *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990). An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons. *Lester*, 81 F.3d at 831. In contrast, a contradicted opinion of a treating professional may be rejected for "specific and legitimate" reasons. *Id.* at 830. However, the opinions of a treating or examining physician are "not necessarily conclusive as to either the physical condition or the ultimate issue of disability." *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999). In this case, the record includes no opinion from any of Plaintiff's treating physicians.

### C.     The ALJ Properly Analyzed Evidence in the Record as a Whole

"[A]n ALJ is responsible for determining credibility and resolving conflicts in medical testimony." *Magallanes*, 881 F.2d at 750. An ALJ may choose to give more weight to opinions that are more consistent with the evidence in the record. 20 C.F.R. §§ 404.1527(c)(4) ("the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion").

After determining that Plaintiff's testimony was not fully reliable, as discussed in section VII above, the ALJ found that the objective evidence and the expert medical opinions did not support Plaintiff's allegations that her symptoms and limitations were disabling. AR 23. The ALJ disagreed with Dr. Wagner's opinions concerning postural activities, finding that objective medical evidence support a finding of greater limitations. AR 23. However, the ALJ found that the balance of Dr. Wagner's opinion was persuasive and entitled to substantial weight, particularly because Dr. Wagner reviewed the complete documentary record and supported his opinion with citations to pertinent evidence of record. AR 23. In addition, Dr. Wagner's assessment was consistent with Plaintiff's ability to walk for exercise. AR 23.

The ALJ also gave substantial weight to the opinions of the agency physicians, Drs. Bullard and Cooper. AR 23. Although the ALJ considered Plaintiff to have greater limitations of

standing and walking than the agency physicians opined, the balance of their opinions were internally consistent and well supported by specific references to medical evidence. AR 23. The opinions of the agency physicians were also consistent with Plaintiff's testimony concerning her ability to go shopping. AR 23.

Understandably, in assessing her own residual functional capacity Plaintiff would interpret her symptoms and treatment differently. However, the Court is not required to accept Plaintiff's characterization of her treatment records, or the severity of her impairments. The ALJ fully supported her determination based on the medical opinions and the evidence of record. Even if the Court were to accept that the record could support Plaintiff's opinion, the record also amply supports the ALJ's interpretation. When the evidence could arguably support two interpretations, the Court may not substitute its judgment for that of the Commissioner. *Jamerson*, 112 F.3d at 1066.

## IX. Conclusion and Order

Based on the foregoing, the Court finds that the ALJ's decision that Plaintiff is not disabled is supported by substantial evidence in the record as a whole and is based on proper legal standards. Accordingly, this Court DENIES Plaintiff's appeal from the administrative decision of the Commissioner of Social Security. The Clerk of Court is directed to enter judgment in favor of Defendant Andrew Saul, Commissioner of Social Security, and against Plaintiff Nancy Ann Barone.

IT IS SO ORDERED.

Dated:   **July 9, 2020**                             **/s/ Gary S. Austin**
                                                                         UNITED STATES MAGISTRATE JUDGE